## Case No. 7,601.

### The KALMAR.

[10 Ben. 242.] [1]

District Court, E. D. New York.    Jan., 1879.

HALF PILOTAGE—LIEN—VESSEL BOUND THROUGH HELL GATE.

1. A claim for half pilotage by a Hell-Gate pilot, under the statute of the state of New York, constitutes a lien upon the vessel.

2. But to establish such claim it must be shown at the time of the tender of the pilot's services, the vessel was in the prosecution of a voyage which would carry her through Hell Gate.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Scudder & Carter, for claimant.

BENEDICT, District Judge. The principal question presented for determination in this case is whether a lien upon the vessel attaches to a claim of a Hell-Gate pilot for half-pilotage. The adjudications of the supreme court of the United States upon the subject of half-pilotage establish the following conclusions: The right to half-pilotage is a right depending upon a quasi contract. U. S. v. Jelliffe, 2 Wall. [69 U. S.] 457. It arises out of an implied promise raised by statute to pay the amount specified by the statute. Ex parte McNeil, 13 Wall. [80 U. S.] 242. The contract is a maritime contract, and for that reason within the jurisdiction of the admiralty. Id. 243.

From these adjudications the conclusion follows that the consideration of the promise is the exertion of the pilot to reach the vessel for the purpose of placing at the disposal of the vessel the pilot's knowledge and skill. Such being the consideration of the promise, the liability of the vessel attaches according to the general rule of the maritime law by which the vessel herself is held responsible for the contracts of the master entered into for the benefit of the vessel.

To this rule there may be some exceptions, but no reason is suggested upon which to found an exception in cases of this description. The responsibility of the owner is not increased by the existence of the lien, and upon the theory at the foundation of the law of compulsory pilotage a claim of half-pilotage would be entitled to be protected equally, to say the least, with any other class of demands.

But it is said the right to half-pilotage depends upon a statute of the state, and as that statute does not declare the vessel bound, there is no lien. I am unable to see how the presence or absence of a provision for a lien in a statute of the state can affect the question whether a maritime lien attaches by reason of the contract in question. The existence or non-existence of a lien in connection with any class of maritime contracts is to be determined for the United States by those courts of the United States having jurisdiction in all cases of admiralty and maritime jurisdiction. The Lottawana, 21 Wall. [88 U. S.] 558. In determining such a question the courts of admiralty resort to those principles found embodied in that venerable law of the sea, which, with proper qualifications, is received with the binding force of law in all countries (see opinion delivered by Bradley, J., Id. 574); and in that law there is no rule of more general application than the one which declares the vessel bound by the contract of the master entered into for the benefit of the vessel and upon her credit.

The nature and object of the rule requires that no such case should be treated as an exception without good reason, and no reason whatever for the exception in the case of de-

mands of the character under consideration has been suggested here. Moreover, the existence of a lien in connection with a demand for pilotage has been often declared, and no ground is discovered for a sound distinction between a claim for full pilotage, and a claim for half-pilotage, as that claim has been interpreted by the supreme court of the United States. The absence of any distinction has been expressly declared by high authority. Says Judge Lowell, in the case of The America [Case No. 289], which was an action for half-pilotage: "This is a suit for pilotage—that is, a pilot's fee—not, indeed, for services actually rendered in piloting a vessel, but for an offer which the law makes the equivalent of such actual service."

The claim under consideration is, then, a demand for pilotage and it is covered by the 14th general admiralty rule, where the right to proceed in rem against the vessel for pilotage is declared by the supreme court of the United States. It is only necessary to add that in Ex parte McNeil [supra], as appears by the opinion of the court, the question of lien was presented to the court. But the case was one in personam, and it was unnecessary to determine whether the libellant had or had not a lien, therefore no opinion was expressed on that point. Nevertheless, considering that the proceeding was for a prohibition taken for the sole purpose of obtaining from the supreme court its direction in regard to demands of this character, and looking to the language of the opinion delivered, it may well be supposed that if any doubt had been entertained as to the existence of a lien in this class of cases it would have found expression in the opinion of the court. It is also to be noticed that the decision of the court in Ex parte McNeil, is made to turn upon the proposition that contracts relating to pilotage are within the sphere of the admiralty jurisdiction, thus affirming the absence of any distinction between a claim for half-pilotage and one for pilotage proper.

For these reasons the demand of the libellant would be upheld and a decree rendered against the vessel for the amount of the demand, but that there is an exception to the libel upon the ground that it fails to aver that at the time of the alleged tender of service by the pilot the vessel was engaged in the prosecution of a voyage that would carry her through Hell-Gate. The libel is in this respect similar to one considered by this court in the case of The Traveller [Case No. 14,147], where a similar objection was taken and sustained. The exception must therefore be sustained in this case, and it is fatal to the action as it stands. Nor will it be of any avail for the libellant to apply to have the libel amended so as to conform in this particular to the facts proved, for upon looking at the evidence I find it insufficient to sustain the other averments of the libel. The libel must therefore be dismissed and with costs.